# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3337

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Duane Frederick Fisher, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 10, 2004

Filed:  April 22, 2004

_____

Before WOLLMAN, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Duane Frederick Fisher was charged with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Fisher was stopped by police after a citizen reported to officers that a man matching Fisher's description had threatened him with a gun.  Fisher moved to suppress evidence obtained during the stop on the ground that the encounter constituted an arrest without probable cause.  After the district court[1]

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

denied Fisher's motion, Fisher entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. Fisher now appeals, and we affirm.

I.

On the morning of October 11, 2002, Officers Clifford and Kingdon of the Minneapolis Police Department were driving through what they described as a violent, crime-infested neighborhood in response to a fight-with-weapons call. They stopped their patrol car to speak to two Native Americans, appellant Fisher and someone named Lorenzo, who appeared to the officers to be a juvenile. At the time, Fisher had a temporary cast and crutches, and was wearing a light brown plaid flannel shirt. During their encounter with the officers, Fisher and Lorenzo were cooperative and non-threatening. From their squad car, the officers questioned Fisher and Lorenzo to determine whether Lorenzo was a truant. Satisfied with the answers, the officers left and proceeded to their original destination.

The officers drove for about three blocks, where they were flagged down by a Hispanic male unknown to them. We will refer to this man as "the complainant." The complainant told the officers that an "Indian guy" with crutches and a light brown flannel shirt had pointed a gun at him only moments earlier, and that he thought he had been robbed by the same "Indian guy" several weeks earlier. The officers did not ask the complainant's name or run a records check. They told him to stay where he was located, and then left to retrace their route looking for Fisher.

When the officers spotted Fisher, they pointed their guns at him, ordered him to stop, and told him to raise his hands. Officer Clifford later explained that they had drawn their weapons because of concern for their safety. During this encounter, Fisher blurted out that he had a gun. Clifford found and removed a pistol from Fisher's pocket. Fisher was then arrested. When officers attempted to find the complainant, they could not locate him. All attempts to locate or identify him were unsuccessful.

After the government charged Fisher with unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), Fisher moved to suppress his statement and the gun on the ground that the evidence was the fruit of an illegal arrest. The district court, upon *de novo* review of a recommendation from the magistrate judge, credited the testimony of the officers, and ruled that the officers had a reasonable, articulable suspicion that justified the stop and frisk of Fisher.

II.

Fisher's argument has two prongs. First, he contends that his final encounter with the police was not a mere investigative stop, but that it became an arrest when the officers pointed their guns at him. Second, Fisher argues that this alleged arrest was illegal because it was effected without probable cause. Specifically, he contends that the statement of the unidentified complainant was insufficient to establish probable cause to arrest, especially in light of Fisher's earlier cooperation with the officers. We review *de novo* whether a particular set of facts provides a reasonable, articulable suspicion for an investigative stop, *Ornelas v. United States*, 517 U.S. 690, 699 (1996), and whether a particular seizure amounts to an arrest. *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994). Because we conclude that the stop was supported by a reasonable, articulable suspicion, and that the degree of force used by the officers did not transform the encounter from an investigative stop to an arrest, we reject Fisher's contention.

The district court correctly held that the officers possessed a reasonable, articulable suspicion sufficient to conduct an investigative stop of Fisher under *Terry v. Ohio*, 392 U.S. 1 (1968). The Supreme Court long ago made clear that it is appropriate for police to conduct an investigative stop "when the victim of a street crime seeks immediate police aid and gives a description of his assailant." *Adams v. Williams*, 407 U.S. 143, 147 (1972). This is such a case.

During their initial encounter with Fisher, the officers had an opportunity to observe Fisher's appearance and attire, including his cast and crutches. These characteristics certainly set Fisher apart from the ordinary pedestrian. Less than a minute later, in close proximity to where the officers had encountered Fisher, the officers were flagged down by the complainant. The complainant approached the officers, telling them he had been assaulted in that area by someone matching Fisher's distinctive description moments earlier. Although the officers did not know the complainant's name or why he was at the location, they were nonetheless confronted with an in-person report of a serious street crime and a description of the perpetrator that matched Fisher. The complainant's report was corroborated by the fact that Fisher was in close proximity to the scene of the alleged assault at or around the time it was alleged to have occurred. Based on this information, the officers had reasonable suspicion that Fisher committed a crime, and that he was armed and dangerous.

An investigative stop must be limited in scope and manner to satisfy the requirements of *Terry*. There is "no 'litmus-paper test' or 'sentence or paragraph' rule to determine when, given the 'endless variations in facts and circumstances,' police-citizen encounters exceed the bounds of mere investigative stops." *United States v. Jones*, 759 F.2d 633, 636 (8th Cir. 1985) (quoting *Florida v. Royer*, 460 U.S. 491, 506 (1983) (plurality opinion)). It is well established, however, that when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety. *See United States v. Navarette-Barron*, 192 F.3d 786, 789-91 (8th Cir. 1999) (officers did not exceed limits of *Terry* stop by drawing weapons and handcuffing drug trafficking suspect who may have been armed); *United States v. Lloyd*, 36 F.3d 761, 762-63 (8th Cir. 1994) (brandishing gun and ordering suspect to raise hands did not transform *Terry* stop to an arrest where police were looking for men who had just threatened complainant with firearms); *United States v. Danielson*, 728 F.2d 1143, 1146-47 (8th

-4-

Cir. 1984) (officers did not exceed bounds of investigative detention by approaching suspects in armed bank robbery with weapons drawn).

The decision to approach Fisher with guns drawn was reasonably necessary to the investigative stop. Although Fisher had been cooperative in his initial encounter with the officers, this cooperation did not negate the risk that Fisher was armed and potentially dangerous. After their first contact with Fisher, the officers received specific information that an assailant matching Fisher's description had used a gun in connection with an assault only minutes earlier. Moreover, the officers were approaching Fisher in a neighborhood known for gun violence. Under these circumstances, the officers were entitled to exercise a great degree of control over the investigative stop.

Fisher was detained justifiably at the time he announced to the officers that he had a gun, so his statement was not the fruit of a constitutional violation. Based on Fisher's statement, the officers had authority to seize the firearm to ensure their safety. *See Adams*, 407 U.S. at 147-48; *Terry*, 392 U.S. at 29-30. With the report of the complainant and the seizure of the firearm, the officers had probable cause to arrest Fisher for assault or robbery. Accordingly, the judgment of the district court is affirmed.

_____