# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1752

_____

United States of America

*Plaintiff - Appellee*

v.

Michael E. Walker, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 11, 2014
Filed: November 14, 2014

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Responding to a reported drive-by shooting, police stopped a car near the scene. A search uncovered a handgun in the pouch of the seat in front of passenger Michael Walker. Walker was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the firearm, challenging the initial stop but not the search. The motion was denied, and he entered a

conditional guilty plea. On appeal, Walker argues the district court[1] erred in denying his motion to suppress. He also appeals his forty-four month prison sentence, arguing the court erred in applying a four-level enhancement for possessing the firearm in connection with another felony offense. See U.S.S.G. § 2K2.1(b)(6)(B). We affirm.

## I. The Suppression Issue

The facts relied on by the district court in denying Walker's motion to suppress are not disputed. Shortly before 1:00 a.m., a caller informed emergency dispatch of a drive-by shooting at 1405 Idaho Street in Des Moines, Iowa. The dispatcher reported to police that the caller saw two African-American males getting into a "Suburban," which then headed east on Cleveland Avenue. Officer Todd Wilshusen, on patrol nearby, responded. He knew that a witness in a recent murder investigation resided at the reported address, and that a suspect in the murder, Corey Rankins, lived two or three blocks east of 1405 Idaho Street. "Approximately a minute" after receiving the dispatch, Wilshusen spotted a Suburban backing out of the driveway to Rankins's house, the second vehicle Wilshusen encountered after the dispatch. Unable to see how many people were in the Suburban or their identities, Wilshusen turned his patrol car towards the vehicle and turned on his spotlight. Wilshusen exited his car and approached the Suburban, which had stopped. He saw Walker sitting in the driver's side backseat. The other occupants were three women. A search of the Suburban revealed the handgun that Walker seeks to suppress.

Walker argues that Wilshusen lacked reasonable suspicion to stop the Suburban. "For an officer to perform an investigatory stop of a vehicle, there must be reasonable suspicion. . . . that criminal activity is afoot," that is, "some minimal,

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, adopting the Report and Recommendation of the Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa.

objective justification for an investigatory stop." United States v. Farnell, 701 F.3d 256, 261 (8th Cir. 2012) (quotations omitted).  We determine whether an officer had reasonable suspicion *de novo*, evaluating "the totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."  United States v. Humphrey, 753 F.3d 813, 816 (8th Cir. 2014), quoting United States v. Arvizu, 534 U.S. 266, 273 (2002).

We reviewed a case involving similar facts in United States v. Juvenile TK, 134 F.3d 899 (8th Cir. 1998).  After receiving reports that a man with a gun broke a window and got into a "gray vehicle," and a short time later brandished a weapon at a gas station, a police officer stopped a gray car about two blocks away from the gas station. Id. at 900-01.  We concluded that the officer had reasonable suspicion to stop the car based on "the temporal and geographic proximity of the car to the scene of the crime, the matching description of the vehicle, and the time of the stop." Id. at 903. Here, as in TK, police were responding to reports of "clearly criminal activity," id. at 904, a drive-by shooting at the residence of a witness in a murder investigation. A Suburban was reported leaving the scene of this early morning crime.  Officer Wilshusen spotted a Suburban leaving the driveway of a suspect in the investigation, a short distance from the reported shooting.  All this was more than enough reasonable suspicion to stop the Suburban and investigate its occupants.  Walker argues there was no reasonable suspicion because the vehicle contained one male passenger and the dispatcher reported two males getting into a Suburban.  But Wilshusen could not see who was in the car until he made the initial stop.  His actions after making the stop and using his spotlight to determine who was in the vehicle are not at issue.  The district court did not err in denying the motion to suppress.

## II. The Sentencing Issue

Walker argues the district court erred in imposing a four-level enhancement to his advisory guidelines offense level because he "used or possessed [the] firearm . . .

in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "Another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C).

Walker's Presentence Investigation Report stated that police interviewed the resident of 1405 Idaho Street after she called emergency dispatch. She reported hearing five or six shots outside the residence and saw two males running away and getting in the Suburban. Brought to the scene of the investigative stop, she identified Walker as one of the males. He was "visually tired, sweating, and out of breath," and a loaded .40 caliber handgun was found in the pouch of the seat in front of him. The PSR recommended imposing the four-level enhancement. In response to Walker's objection, the Probation Officer identified "multiple felonious offenses" under the Iowa Code that "could be used to justify" the enhancement. At sentencing, the government established the facts stated in the PSR by the testimony of Officer James Chadwick, who interviewed the resident at the same time Wilshusen was stopping and searching the Suburban. The government argued, as it does on appeal, that Walker's conduct violated Iowa Code § 724.4(1), an aggravated misdemeanor that qualifies as "another felony offense" because it is punishable by imprisonment for up to two years. United States v. Anderson, 339 F.3d 720, 724 (8th Cir. 2003).

At sentencing and on appeal, Walker raised a recurring issue regarding application of the § 2K2.1(b)(6)(B) enhancement. The definition of another felony offense in Application Note 14(C) has an exclusion -- "other than the explosive or firearms possession or trafficking offense." Prior to 2011 amendments to § 2K2.1, the exclusion was found in Note 15 and was more broadly worded -- "offenses other than explosives or firearm possession or trafficking offenses." See III U.S.S.G. app.

C, amendment 691, at 172.[2] Although we construed the prior exclusion narrowly, see United States v. English, 329 F.3d 615, 616-17 (8th Cir. 2003), other circuits concluded that the exclusion "categorically removed" firearm possession and trafficking offenses from the four-level enhancement. See United States v. Lindquist, 421 F.3d 751, 755 (8th Cir. 2005). Thus, the narrowing of the exclusion in the 2011 amendments was significant.

We construed amended Note 14(C) in United States v. Jackson, 633 F.3d 703, 705-06 (8th Cir. 2011), explaining that:

> the plain language of § 2K2.1(b)(6) casts a broad net. . . . Application note 14(C) narrows the scope only slightly by defining "another felony offense" to exclude "the explosive or firearms possession or trafficking offense." . . . The phrase "the . . . firearms possession . . . offense" in application note 14(C) most plainly refers to the underlying offense of conviction -- in [this] case, possession of a firearm by a felon. Thus, the plain language of application note 14(C) excludes only the underlying firearms possession offense of conviction from the definition of "another felony offense."

The other felony offense at issue in this case, Iowa Code § 724.4(1), is a firearm offense. It provides that -

> a person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor.

---

[2]In reviewing relevant cases, it is important to remember that the numerous 2011 amendments moved the four-level enhancement from § 2K2.1(b)(5) to (b)(6), and moved the definition of "another felony offense" from Note 15 to Note 14(C).

At sentencing, Walker argued that the district court "can't use another firearms offense" as the basis for applying the four-level enhancement. That argument was contrary to the plain language of Note 14(C) as construed in Jackson. On appeal, without citing Jackson, Walker complains that the district court, while finding by a preponderance of the evidence that Walker was involved in the shooting at 1405 Idaho Street, did not identify what other offense under state law Walker had committed. But this omission, if an error at all, was harmless because the facts as found by the court obviously supported a charge that Walker had violated § 724.4(1).

At oral argument, defense counsel put forward a different argument, suggesting that this case falls within the purview of Lindquist, where we held that the state law offense at issue -- acquiring a handgun without a valid permit -- was not "another felony offense" for purposes of the four-level enhancement because it "involved essentially the same conduct as his conviction for being a felon in possession of a firearm." 421 F.3d at 756. We addressed this issue in Jackson, where we limited the rule in Lindquist to cases where a defendant "could not have committed the underlying federal offense without also violating the state offense that the district court used to support the [enhancement]." 633 F.3d at 707. That was true in Lindquist because state law precluded convicted felons from obtaining permits to acquire handguns.

Here, as in Jackson, Walker was not "doomed to automatically commit the additional felony when he violated 18 U.S.C. § 922(g) by possessing a firearm as a felon." Id. Iowa Code § 724.4(1), unlike 18 U.S.C. § 922(g), requires proof that the defendant went armed "with a dangerous weapon *concealed on or about the person*," or went armed with a handgun "*within the limits of any city*," or "*knowingly* carrie[d] or transport[ed] [a handgun] *in a vehicle*." (Emphasis added). Thus, § 724.4(1) does not fall within the narrow Note 14(C) exclusion for "*the . . . firearms possession . . . offense*" (emphasis added), and applying the four-level enhancement in U.S.S.G. § 2K2.1(b)(6) does not implicate the "double counting" concerns underlying our

decision in <u>Lindquist</u>, 421 F.3d at 756.  Rather, Walker "used . . . [the] firearm . . . in connection with another felony offense" when he was involved in the shooting at 1405 Idaho Street.  Therefore, the district court did not err in imposing the four-level enhancement.[3]

        The judgment of the district court is affirmed.

_____

---

[3]Given our decision the four-level enhancement was properly imposed, we need not address the government's alternative argument that any error was harmless.  In imposing the forty-four-month sentence, the district court explicitly stated that, due to Walker's connection with the drive-by shooting and history of violent crimes, it would impose that sentence after considering the sentencing factors in 18 U.S.C. § 3553(a) "regardless of how I resolve the issue of the four-point enhancement." <u>See</u> <u>United States v. LaRoche</u>, 700 F.3d 363, 365 (8th Cir. 2012).