# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1501

_____

United States of America

*Plaintiff - Appellee*

v.

Dontay Dakwon Sanford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: October 23, 2015
Filed: February 16, 2016
[Published]

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Dontay Sanford pled guilty to being a felon in possession of a firearm after police found a firearm during a protective search of a vehicle in which Sanford was seated. Sanford filed a motion to suppress the search of the vehicle, which the district

court[1] denied. The district court subsequently sentenced Sanford to 96 months' imprisonment. Sanford appeals the order denying his suppression motion, the district court's finding that he possessed the firearm in connection with another felony offense, and his sentence. We affirm.

I

During the early morning hours of July 6, 2014, an employee at Club 319, a nightclub in Waterloo, Iowa, called the Waterloo Police Department to report that a patron at the bar threatened to "do something to somebody" when the bar closed. The employee did not give further information about the nature of the threat, but Waterloo Police Officers described the area surrounding Club 319 as a high crime area and reported that Club 319 had a very high call volume with higher risk calls, such as fights, stabbings, and shootings. The employee described the patron as a black male with dreadlocks who was wearing a white shirt and blue shorts.

At approximately 1:15 a.m., dispatch for the Waterloo Police Department relayed the report to officers. Officer Ryan Muhlenbruch arrived on the scene first, and he noticed a man – later identified as Sanford – matching the suspect's description walking towards a parked car in an alley halfway down the block from Club 319. Officer Muhlenbruch pulled his squad car into the alley and stopped, but he did not activate his lights or siren. Sanford walked around the car and toward the passenger door, at which point Officer Muhlenbruch exited his vehicle and yelled, "Hey, partner." Sanford made eye contact with Officer Muhlenbruch but continued into the passenger seat of the vehicle.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Officer Muhlenbruch approached the vehicle with a flashlight in one hand and his other hand on his holster. As he approached, he could see Sanford leaning forward in the passenger seat, and it appeared to Officer Muhlenbruch that Sanford was reaching for the console with his left hand while concealing an item below the seat in his right hand. Officer Muhlenbruch drew his firearm and instructed Sanford to show his hands, exit the vehicle, and place his hands on the top of the car. Sanford complied.

When Sanford exited, Officer Muhlenbruch recognized him from previous encounters. Officer Muhlenbruch knew from these encounters Sanford had a criminal history that included a conviction for burglary in the first degree and weapons charges.

Officer Muhlenbruch holstered his weapon, handcuffed Sanford, and patted him down for weapons. While he patted Sanford down, another officer arrived on the scene. The pat down did not reveal any weapons, so Officer Muhlenbruch returned to his squad car, placed Sanford in the back, and called in the license plate number of the vehicle Sanford was seated in. The license plate check indicated the vehicle was a rental. Officer Muhlenbruch then searched the passenger compartment of the vehicle, where he found a loaded Ruger .357 revolver under the passenger seat.

Officer Muhlenbruch returned to his squad vehicle, read Sanford his Miranda warnings, and asked Sanford if he wanted to talk. Sanford said, "I ain't talking to you about shit." While officers processed the scene, a recording system in the squad car captured Sanford making a number of incriminating statements during a personal phone call.

In July 2014, a grand jury charged Sanford with one count of being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Sanford filed a motion to suppress the evidence Officer Muhlenbruch retrieved in the search

-3-

of the vehicle and the subsequent incriminating statements Sanford made while in the squad car. A United States Magistrate Judge[2] held an evidentiary hearing on the motion and, following the hearing, recommended the district court deny Sanford's suppression motion. The district court adopted the magistrate judge's report and recommendation and denied Sanford's motion to suppress. Sanford subsequently pled guilty to the charge, reserving his right to appeal the order denying his motion to suppress.

Prior to sentencing, a U.S. Probation Officer prepared a Presentence Investigation Report (PSIR) that found Sanford had twenty criminal history points. Sanford objected to three of the twenty criminal history points, along with other facts in the report. The probation officer kept all of the criminal history points in the report over Sanford's objections, and it noted one of the convictions to which Sanford objected did not alter his total criminal history score.

At sentencing, the district court found a base offense level of 20 and, over Sanford's objection, it applied a four-level increase to the offense level under United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(6)(B) (2014) because Sanford used or possessed a firearm "in connection with another felony offense." After downward adjustments for acceptance of responsibility and timely notification, the court found Sanford had a total offense level of 21 and a criminal history category of VI, yielding a guideline range of 77 to 96 months' imprisonment. The court sentenced Sanford to 96 months' imprisonment and noted that even if it miscalculated the guideline range it would have varied upward to a sentence of 96 months' imprisonment in light of Sanford's "serious criminal history." Sanford timely appealed.

---

[2]The Honorable John S. Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

II

Sanford raises three issues on appeal. First, he argues the district court erred by denying his motion to suppress the evidence Officer Muhlenbruch discovered in his search of the vehicle. Second, he argues the district court erred when it applied a four-level increase to his offense level under U.S.S.G. § 2K2.1(b)(6)(B). Third, he argues the district court's sentence was substantively unreasonable.

A

Sanford first argues the district court erred in denying his motion to suppress because Officer Muhlenbruch's stop exceeded the scope of a Terry investigative stop and amounted to a de facto arrest without probable cause.

When a defendant appeals a district court's order denying a motion to suppress evidence, we review the district court's "factual findings for clear error, and questions of constitutional law de novo." United States v. Long, 797 F.3d 558, 564 (8th Cir. 2015) (citing United States v. Douglas, 744 F.3d 1065, 1068 (8th Cir. 2014)). "We affirm unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Gunnell, 775 F.3d 1079, 1083 (8th Cir. 2015) (citing Douglas, 744 F.3d at 1068).

Sanford concedes Officer Muhlenbruch had reasonable suspicion to support a Terry stop, but he argues the scope of the stop exceeded Terry and amounted to a de facto arrest. The United States does not argue Officer Muhlenbruch had probable cause to arrest Sanford, but rather the search of the vehicle was merely a Terry stop supported by reasonable suspicion. The only issue on appeal, therefore, is whether the stop was a de facto arrest or merely a Terry stop.

There is no clear line between investigative stops and de facto arrests. United States v. Guevara, 731 F.3d 824, 831 (8th Cir. 2013). A de facto arrest occurs when the officer's conduct is more intrusive than necessary for a Terry investigative stop. United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994). During a Terry stop, officers must use "the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the Terry stop." United States v. Newell, 596 F.3d 876, 879 (8th Cir. 2010) (quoting United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999)). "A Terry stop may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." Id. "As part of a lawful Terry stop, officers may take any measures that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" United States v. Smith, 648 F.3d 654, 659 (8th Cir. 2011) (quoting Newell, 596 F.3d at 879). "[W]hen officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." United States v. Fisher, 364 F.3d 970, 973 (8th Cir. 2004). "In discerning whether [an officer's] actions [meet] the Fourth Amendment's standard of reasonableness, the issue is whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." Williams v. Decker, 767 F.3d 734, 740 (8th Cir. 2014), cert. denied, 135 S. Ct. 1418 (2015).

We find the scope and means of Officer Muhlenbruch's investigative stop were not more intrusive than necessary, and therefore the stop did not amount to a de facto arrest. First, it was reasonable for Officer Muhlenbruch to search for a weapon based on the time, location, and circumstances surrounding the report of an incident at Club 319. Officer Muhlenbruch was responding to a call that a patron of a nightclub had threatened to "do something" when the club closed, and he observed a man matching the suspect's description walking outside the club. Although Officer Muhlenbruch did not know what the man had threatened to do, he knew the area surrounding the

-6-

club was a high crime area with a high volume of fights, stabbings, and shootings. This threat in the early-morning hours in a high crime area gave Officer Muhlenbruch reason to believe the suspect might be armed and dangerous. See United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005) (finding reasonable suspicion to justify investigation when officer encountered suspect in high-crime neighborhood at 1:00 a.m.).

Second, Sanford's furtive movements support Officer Muhlenbruch's decision to order Sanford out of the vehicle. Officer Muhlenbruch observed Sanford lean forward in the passenger seat of the car and obscure an object under the passenger seat. Officer Muhlenbruch reasonably believed the suspect presented a serious threat, and therefore his decision to brandish his weapon to respond to the potential threat was also reasonable. Under these circumstances, it did not exceed the scope of a Terry stop for Officer Muhlenbruch to order Sanford out of the vehicle, even though he did so with his gun drawn. United States v. Morgan, 729 F.3d 1086, 1090 (8th Cir. 2013) (reasoning "furtive gestures" by the driver of vehicle supported a "reasonable belief that [the driver] was dangerous"); Fisher, 364 F.3d at 973 (noting it may be reasonably necessary for officer to draw a gun for investigative stop).

Finally, once Sanford exited, Officer Muhlenbruch recognized him from prior encounters and chose to detain him while he cleared the area of weapons. This, too, was reasonable under the circumstances. Officer Muhlenbruch knew Sanford had a criminal history that included weapons charges, he had seen Sanford conceal an object under the seat of the vehicle, and when released, Sanford would have been able to return to the vehicle where he could have accessed the object he concealed. Under these circumstances, it was reasonable for Officer Muhlenbruch to temporarily detain Sanford, and to sweep the passenger seat and compartment of the vehicle for weapons. See United States v. Martinez-Cortes, 566 F.3d 767, 771 (8th Cir. 2009) (concluding the occupants' failure to comply promptly with police orders and furtive movements by driver gave officers "reason to suspect . . . that the occupants might be

-7-

a risk to officer safety unless detained"); United States v. Smith, 645 F.3d 998, 1002 (8th Cir. 2011) ("After securing a suspect, officers may also conduct a protective sweep of the vehicle's passenger compartment to search for dangerous weapons that the suspect or other occupants might later access.").

Under the totality of the circumstances, it was reasonable for Officer Muhlenbruch to draw his weapon, order Sanford out of the vehicle, detain Sanford in handcuffs, and sweep the passenger seat of the vehicle for weapons. Therefore, the investigative stop and protective sweep of the vehicle was not more intrusive than necessary, and it did not amount to a de facto arrest.

B

Sanford next argues the district court erred when it applied a four-level increase to his offense level under U.S.S.G. § 2K2.1(b)(6)(B) because he possessed the firearm in connection with another felony offense. We review de novo a district court's application of the Sentencing Guidelines. United States v. Patrie, 794 F.3d 998, 1000 (8th Cir. 2015).

U.S.S.G. § 2K2.1(b)(6)(B) directs the district court to increase the defendant's offense level by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense," even if the defendant was not charged for the other felony offense. U.S.S.G. § 2K2.1(b)(6)(B). The "other felony offense" includes all federal, state, or local felonies "other than the explosive or firearms possession or trafficking offense." U.S.S.G. § 2K2.1 cmt. n.14(C). In this case, the district court based the enhancement on the fact that by carrying the firearm within the city limits of Waterloo or by concealing the firearm, Sanford violated Iowa Code § 724.4(1), which prohibits a person from "go[ing] armed with a dangerous weapon concealed on or about the person," or "go[ing] armed with any loaded firearm

within the limits of any city" (whether concealed or not), or knowingly carrying or transporting a pistol or a revolver in a vehicle.

We do not need to decide whether the district court erred when it applied this enhancement, because any error would be harmless. "Incorrect application of the Guidelines is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence." United States v. Straw, 616 F.3d 737, 742 (8th Cir. 2010). Citing Sanford's "serious criminal history, his history and characteristics, his violent criminal history" and his "extremely high likelihood to recidivate," the district court indicated it would vary or depart upward to a sentence of 96 months' imprisonment even if it incorrectly calculated the guideline range. This alternative upward variance was substantively reasonable based on the 18 U.S.C. § 3553(a) factors, and therefore any guideline error would have been harmless. See United States v. Grandon, 714 F.3d 1093, 1097 (8th Cir. 2013).

C

Finally, Sanford argues the district court's sentence was substantively unreasonable. We review the imposition of sentences under a deferential abuse-of-discretion standard, first ensuring the district court committed no significant procedural error, and then considering the substantive reasonableness of the sentence. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

Sanford notes the district court characterized his criminal history as "outrageous" and contends this characterization shows the district court committed procedural error by relying on two criminal history points to which he objected in the PSIR. The record belies this argument. The district court made no comment that it was relying specifically upon the two objected-to points when it sentenced Sanford, but rather it expressly stated it was relying only on the "unobjected-to portions of the

Presentence Investigation Report." Sanford had a criminal history score of 20 even without the two criminal history points to which he objected, placing him well into criminal history VI. This criminal history included convictions for assault, domestic abuse, theft, burglary, and child endangerment. Therefore, the unobjected-to portions of the PSIR show that the district court's characterization of Sanford's criminal history as "outrageous" was not an abuse of discretion.

The district court adequately considered the § 3553(a) factors and did not rely on any portion of the PSIR to which Sanford objected. Its sentence at the top of the guideline range was substantively reasonable.

### III

For the foregoing reasons, the judgment is affirmed.

BYE, Circuit Judge, concurring.

I concur in the opinion of the Court, but I write separately as to Part II.B. While I recognize that in this case the district court's alternative sentence made any guideline error harmless, in the future I encourage this Court, sitting en banc, to revisit its holding in United States v. Walker, 771 F.3d 449 (8th Cir. 2014), which I believe is inconsistent with our Court's interpretation of United States Sentencing Guideline § 2K2.1(b)(6)(B).

In firearms possession cases, U.S.S.G. § 2K2.1(b)(6)(B) directs a district court to increase the defendant's offense level by four levels if the defendant used or possessed the firearm in connection with "another felony offense." Application Note 14(C), however, carves out a small exception. It defines "another felony offense" to include all federal, state, or local felonies "other than the explosive or firearms possession or trafficking offense." Thus, this four-level enhancement will apply

-10-

when a felon in possession commits "another felony" by using the firearm to rob a bank, but not when the "other felony" is merely the state law crime of being a felon in possession of a firearm.

If read too broadly, the "other felony" enhancement risks impermissibly increasing the defendant's sentence for the same conduct for which the defendant was convicted, as we explained in United States v. English, 329 F.3d 615 (8th Cir. 2003). English was convicted of being a felon in possession of a firearm and he received a four-level enhancement because he had used the firearm to steal six other firearms. Id. at 617. We rejected English's argument that his possession of the stolen firearms could not serve as a basis for a four-level "other felony" enhancement, because the other felony was a theft offense, not "a firearms-possession offense," and nothing about the theft offense necessarily had anything to do with firearms. Id. at 618–19. However, we expressed our "concern that it would be unreasonable, and hence presumably contrary to the Commission's intent, to allow the 'additional felony' to be an offense that the defendant has to commit, in every case, in order to commit the underlying offense." Id. at 618.

Two years later, this concern materialized. In United States v. Lindquist, Lindquist pled guilty to being a felon in possession of a firearm, and the district court increased Lindquist's offense level by four when it found Lindquist committed "another felony" under Iowa law by acquiring ownership of a handgun without a valid annual permit to acquire handguns. 421 F.3d 751, 753 (8th Cir. 2005), abrogated on other grounds as recognized in United States v. Steward, 598 F.3d 960, 962-63 (8th Cir. 2010). We rejected the district court's application of the "other felony" enhancement because Lindquist's violation of Iowa law involved "essentially the same conduct as his conviction for being a felon in possession of a firearm." Id. at 756. Since the base offense level for Lindquist's conviction for being a felon in possession of a firearm "essentially accounted for" the same conduct for which

Lindquist received the four-level "other felony" enhancement, applying the enhancement would impermissibly double count the same conduct. Id. at 756-57.

After we decided English and Lindquist, the United States Sentencing Commission narrowed the firearms possession exception to the "other felony" enhancement. Previously, the exception excluded from the four-level "other felony" increase other "explosives or firearms possession or trafficking offenses," U.S.S.G. § 2K2.2 cmt. n.18 (2003), whereas today it excepts only "*the* explosive or firearms possession or trafficking offense," U.S.S.G. § 2K2.1 cmt. n.14(C) (2014) (emphasis added).

In United States v. Jackson, we reasoned that this amendment narrowed the scope of the firearms possession exception – it now excludes "only the underlying firearms possession offense of conviction from the definition of 'another felony offense'" – but we also reaffirmed that the double counting concerns we expressed in English and Lindquist survived the 2011 amendment. 633 F.3d 703, 706-07 (8th Cir. 2011). Thus, if a defendant is "doomed to automatically commit" the other felony when he commits the offense of conviction (being a felon in possession of a firearm) the "other felony" enhancement does not apply because it would impermissibly double count the same conduct. Id. We found the "other felony" enhancement in Jackson valid because Jackson's "other felony" was the unlawful *use* of a weapon (by firing multiple shots into the air) and therefore he was not "doomed to automatically commit" the other felony merely by committing the offense of being a felon in possession of a firearm. Id. (distinguishing Lindquist on this basis).

Finally, in Walker we found no impermissible double counting when a defendant convicted of being a felon in possession of a firearm received a four-level "other felony" enhancement for violating Iowa Code § 724.4(1). 771 F.3d at 452-53. Iowa Code § 724.4(1) provides:

-12-

> [A] person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor.

We reasoned in Walker that using this statute to enhance a defendant's sentence does not impermissibly double count the same conduct, because in addition to possessing the firearm (the conduct of conviction), the felon also has to either (1) conceal it, (2) load it and carry it in a city, or (3) knowingly transport it in a vehicle. Walker, 771 F.3d at 453. Without this additional conduct, the felon in possession of a firearm would not violate Iowa Code § 724.4(1), and therefore the defendant is not "doomed to automatically" violate this statute merely by being a felon in possession of a firearm. Id. at 452.

I find this reasoning unconvincing in this case because I believe Dontay Sanford was all but guaranteed to violate Iowa Code § 724.4(1) merely by being a felon in possession of a firearm. Sanford is a resident of a city in Iowa. Therefore, the second he stepped outside his residence with a loaded firearm, he triggered the four-level "other felony" enhancement by violating Iowa Code § 724.4(1) because he was in possession of a loaded firearm in a city. If Sanford had stepped outside his residence with the firearm unloaded, he could have complied with the statute and avoided the enhancement – but only if he had the audacity to carry the firearm in the open. Otherwise, he would have been going armed with a dangerous weapon concealed,[3] again violating Iowa Code § 724.4(1) and triggering the four-level "other felony" enhancement. For all practical purposes, once Sanford committed the crime of being a felon in possession of a firearm he was all but "doomed" to violate Iowa Code § 724.4(1) merely because he lived in a city in Iowa. Because Sanford's

_____

[3]Iowa law defines a pistol or revolver as a "dangerous weapon" as a matter of law, even if it is unloaded. State v. Ashland, 145 N.W.2d 910, 911 (Iowa 1966).

-13-

violation of 18 U.S.C. § 922(g)(1) consisted of "essentially the same conduct" (possessing a firearm as a felon) as his violation of Iowa Code § 724.4(1) (possessing a loaded firearm in Waterloo), I do not believe that under U.S.S.G. § 2K2.1(b)(6)(B) Sanford's violation of Iowa law should be considered "another felony." Lindqust, 421 F.3d at 756. It is the same felony.

I also believe this enhancement impermissibly double counts the same conduct. "[D]ouble counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." Jackson, 633 F.3d at 707. Double counting is permissible if the "Sentencing Commission so intended and each guideline section furthers an independent purpose of sentencing." Id. at 708.

The sentencing purpose the "other felony" enhancement furthers is to increase the punishment when the defendant uses the firearm to engage in another felony offense, U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(A), such as when the defendant uses a firearm to burglarize a building, United States v. Vega, 720 F.3d 1002, 1004 (8th Cir. 2013), deal drugs, United States v. Sneed, 742 F.3d 341, 344 (8th Cir. 2014), steal valuable possessions, United States v. Chapman, 614 F.3d 810, 812 (8th Cir. 2010), or engage in a shooting, United States v. Battle, 774 F.3d 504, 516 (8th Cir. 2014). In fact, even in Walker, the defendant used the firearm to engage in additional felonious conduct when he used the firearm in a shooting.[4] 771 F.3d at 453 ("Walker

---

[4]I believe Walker should be distinguished on these facts, but I recognize we are bound by its express holding that "§ 724.4(1) does not fall within the narrow Note 14(C) exclusion for '*the* . . . firearms possession . . . offense' (emphasis added), and applying the four-level enhancement in U.S.S.G. § 2K2.1(b)(6) does not implicate the 'double counting' concerns underlying our decision in Lindquist, 421 F.3d at 756." Walker, 771 F.3d at 453 (alterations in original).

'used . . . [the] firearm . . . in connection with another felony offense' when he was involved in the shooting at 1405 Idaho Street.") (alterations in original).

Sanford's "other felony," by contrast, lacks the additional felonious conduct that warrants greater punishment. The "other felony" Sanford committed was being a felon in possession of a loaded firearm in a city, or being a felon in possession of a concealed firearm. But since the base offense level already accounted for Sanford's possession of the firearm, the additional punishment he received came merely from his presence in a city with the loaded firearm or his concealment of the firearm. Increasing Sanford's guideline range by two-and-a-half-years because he was present in a city rather than in the country – or because he concealed the firearm under the passenger seat rather than carrying it in the open – does not further the purpose of the "other felony" enhancement, and I find it hard to believe the Sentencing Commission would have intended such a result either. Therefore, this enhancement impermissibly double counts the same conduct.

To the extent Walker held a violation of Iowa Code § 724.4(1) is "another felony" under U.S.S.G. § 2K2.1(b)(6)(B), I believe this categorical statement is overly broad, as the facts of this case illustrate. I therefore encourage this Court, sitting en banc, to revisit its holding in Walker.

_____