# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1788
_____

United States of America

*Plaintiff - Appellee*

v.

Andre Perry Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: November 18, 2021
Filed: April 13, 2022

_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Andre Johnson pled guilty to possession of cocaine base with intent to distribute, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm as a felon. Before his plea, Johnson moved to suppress

evidence obtained after police stopped Johnson upon suspicion of criminal activity. The district court[1] denied Johnson's motion. We affirm the district court.

## I. Background

In July 2019, law enforcement received information that an individual named Larry Gibson was purchasing cocaine and crack cocaine from an unidentified black male. A month later, a confidential informant told Detective Emily Rasche of the Davenport, Iowa, Police Department that Gibson was going to meet his "supplier" to purchase drugs. While surveilling Gibson, Rasche witnessed him get into a car with a black male driver who Rasche learned was Johnson. Rasche followed Gibson and Johnson as they went for a drive before returning to Gibson's residence. After Gibson exited, the detectives continued to follow the car eventually leading them to Johnson's grandmother's house. Police ran the plates of the car and discovered the vehicle was registered to Johnson's sister.

Rasche began investigating Johnson after this alleged drug transaction. Rasche learned from an Illinois police department detective that Johnson was suspected of trafficking large amounts of cocaine. Rasche also learned Johnson was known for carrying around a backpack containing drugs and a firearm. Rasche reviewed Johnson's criminal history, including multiple convictions for violent offenses such as violence against police, fleeing from law enforcement, and gun possession. Further, Johnson was a person of interest in a homicide investigation related to an August 2017 shooting.

Rasche reviewed Johnson's Facebook account during her investigation and observed pictures of a royal blue Cadillac with distinct rim wheels. Then, on October 9, 2019, Rasche witnessed the royal blue Cadillac crossing the Centennial Bridge from Illinois into Iowa with Johnson in the passenger seat. Rasche had

---

[1]The Honorable John A. Jarvey, then Chief Judge, United States District Court for the Southern District of Iowa, now retired.

dispatch run the Cadillac's plates, which were expired. Rasche then requested a marked squad car to pull over the Cadillac. Davenport Police Officer Robert Byntar attempted to conduct a traffic stop in his marked vehicle, but the Cadillac fled after stopping briefly.

Rasche attempted to follow the fleeing Cadillac but lost sight of it. About a minute later, however, Rasche saw Johnson walking on a sidewalk, talking on the phone, and carrying a backpack. Rasche again requested assistance from uniformed police officers and warned them Johnson was potentially armed. Byntar arrived on the scene, pulled his squad car up behind Johnson, got out, drew his gun, and ordered Johnson to put his hands up and drop his backpack. Johnson hesitated before lying face down with his arms at his sides.

Another officer, Sergeant Brian Stevens, arrived and knelt over Johnson and handcuffed him, knowing Johnson was potentially armed. Stevens immediately smelled raw marijuana coming from Johnson's person as he knelt over him. Stevens patted Johnson down for weapons and discovered marijuana, over $1,000 in cash, and three cell phones in Johnson's pants pockets. The officers also observed packaging material in Johnson's backpack in plain view and noted the backpack smelled of raw marijuana. The officers later secured a search warrant for the backpack and found a 9 mm handgun, a digital scale, and substantial quantities of various controlled substances.

A grand jury indicted Johnson on four drug and gun crimes. Johnson moved to suppress all evidence obtained after he was stopped by Byntar.[2] The district court denied Johnson's motion in its entirety, holding Byntar had reasonable suspicion to perform a *Terry* stop.[3] The district court further rejected Johnson's argument that police effected a de facto arrest when Byntar drew his weapon and Stevens

---

[2]Johnson filed a second motion to suppress, the denial of which he does not appeal.

[3]*See generally Terry v. Ohio*, 392 U.S. 1 (1968).

handcuffed Johnson. After the district court denied the motion, Johnson pled guilty to possession of cocaine base with intent to distribute, possession of a firearm in furtherance of a drug trafficking offense, and unlawful possession of a firearm as a felon but reserved his right to appeal the denial of his motion to suppress.

## II. Analysis

Johnson now appeals the district court's denial of his first motion to suppress. Specifically, Johnson argues the officers violated his Fourth Amendment rights by conducting a *Terry* stop without reasonable suspicion and by arresting him without probable cause. We review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021).

### A. Reasonable Suspicion

Johnson argues the district court erred in determining the officers had reasonable suspicion to stop him. The Fourth Amendment protects persons against unreasonable seizures. U.S. Const. amend IV. Under *Terry*, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). In developing this suspicion, officers may "rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." *United States v. Allen*, 705 F.3d 367, 370 (8th Cir. 2013) (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). Courts must consider the totality of the circumstances when making reasonable-suspicion determinations to decide whether the detaining officer had a particularized and objective basis for suspecting wrongdoing. *Pollreis v. Marzolf*, 9 F.4th 737, 744 (8th Cir. 2021).

Here, Byntar had a particularized and objective basis for suspecting Johnson of wrongdoing, which provided Byntar with reasonable suspicion to conduct a *Terry* stop. When Byntar stopped Johnson, he did so at the direction of Rasche, who had been investigating Johnson for drug related crimes and as a person of interest in a homicide investigation. Rasche also knew Johnson's criminal history involving drugs and firearms, his penchant for carrying illegal drugs and firearms in a backpack, and the fact Johnson had moments earlier been in a car that fled from police. Rasche and Byntar observed Johnson walking while wearing a backpack. These circumstances, collectively, gave Byntar reasonable suspicion that Johnson was engaging in criminal activity.

Johnson argues his past convictions and his involvement in a suspected drug deal two months earlier were "stale" and thus could not provide reasonable suspicion of ongoing criminal activity. Johnson's argument is unpersuasive, however, because it fails to take into consideration the totality of the circumstances. As detailed above, Rasche was investigating Johnson for drug-related crimes, knew of his criminal history involving drugs, was informed that he was a known drug trafficker, knew Johnson carried drugs and a firearm in a backpack, and had just seen Johnson in the passenger seat of a vehicle eluding police. While some of these facts individually may not be enough to support reasonable suspicion, combined they cross the threshold. *See United States v. Trogdon*, 789 F.3d 907, 911 (8th Cir. 2015) (holding a combination of otherwise innocent conduct can provide officers with reasonable suspicion of criminal activity); *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) (considering previous felony convictions for crimes similar to the crime suspected as a relevant factor in determining reasonable suspicion). The district court correctly held Byntar had reasonable suspicion to stop Johnson.

## B. Arrest

Johnson also argues the *Terry* stop became an arrest when Byntar drew his weapon and Stevens handcuffed Johnson. Johnson then claims this purported arrest was unlawful because the officers lacked probable cause. "A *Terry* stop may

become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." *Waters v. Madson*, 921 F.3d 725, 737 (8th Cir. 2019) (quoting *United States v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010)). Officers may, however, take reasonable measures to protect their safety such as "brandish[ing] weapons or even constrain[ing] the suspect with handcuffs in order to control the scene" while conducting a stop. *United States v. Sanford*, 813 F.3d 708, 713 (8th Cir. 2016) (quoting *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004)). In determining the reasonableness of such actions, "the issue is whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Id.* (quoting *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014)). We consider several factors in determining whether an investigative stop has become an arrest:

> (1) the number of officers and police cars involved; (2) the nature of the crime and whether there is reason to believe the suspect might be armed; (3) the strength of the officers' articulable, objective suspicions; (4) the erratic behavior of or suspicious movements by the persons under observation; and (5) the need for immediate action by the officers and lack of opportunity for them to have made the stop in less threatening circumstances.

*Pollreis*, 9 F.4th at 745 (quoting *United States v. Raino*, 980 F.2d 1148, 1149–50 (8th Cir. 1992)).

The officers' protective actions here did not turn the stop into an arrest. Before the encounter, both officers were told Johnson could be armed. It is well established that officers may reasonably draw weapons during a *Terry* stop when the defendant is suspected of carrying a weapon—even if the defendant is otherwise cooperative. *See Fisher*, 364 F.3d at 973–74 (holding that drawing a gun during a *Terry* stop with a compliant defendant was reasonable because the suspect was potentially armed and dangerous). Moreover, Johnson's flight and noncompliance before the stop indicated the need to use handcuffs during the stop. *See United States*

*v. Smith*, 990 F.3d 607, 611–12 (8th Cir. 2021) (finding use of handcuffs during a stop reasonable in part because of the defendant's noncompliance and earlier flight).

Johnson argues that while the officers' acts in isolation may have not effectuated an arrest, Byntar's drawing his gun and Stevens's using handcuffs combined resulted in a de facto arrest. But our precedent permits using these methods of force together without automatically transforming a *Terry* stop into an arrest. *See, e.g.*, *Pollreis*, 9 F.4th at 745–46 (holding officers reasonably drew guns and used handcuffs during stop); *Sanford*, 813 F.3d at 713–14 (same); *Williams*, 767 F.3d at 740–41 (same); *United States v. Ramirez*, 307 F.3d 713, 716 (8th Cir. 2002) (same); *Navarrete-Barron*, 192 F.3d at 791 (same). Given the officers' belief Johnson was armed combined with his actions prior to the stop, the officers' actions did not transform the stop into an arrest.[4]

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Johnson's motion to suppress.

_____

_____

[4]Johnson does not appeal the district court's ruling that Stevens obtained probable cause to arrest Johnson after smelling raw marijuana as he knelt to handcuff Johnson.