# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 01-3375/01-3546/02-1085

_____

United States of America,　　　　　*

　　　　　　　　　　　　　　　　*

　　　　Appellee,　　　　　　　　*

　　　　　　　　　　　　　　　　*　　Appeals from the United States

　　　　v.　　　　　　　　　　　*　　District Court for the

　　　　　　　　　　　　　　　　*　　District of Nebraska.

Oscar Ramires, Fidel Chaidez, and　*

Romel Velarde,　　　　　　　　　*

　　　　　　　　　　　　　　　　*

　　　　Appellants.

_____

Submitted:  April 18, 2002
Filed: October 9, 2002

_____

Before HANSEN, Chief Judge, McMILLIAN and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

HANSEN, Chief Judge.

　　　In these consolidated direct criminal appeals, Oscar Ramires, Fidel Chaidez, and Romel Velarde ("appellants") challenge the district court's[1] denial of their motion to suppress evidence seized from an apartment they were visiting.  Ramires and

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska, adopting the report and recommendations of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

Chaidez, who were detained by police while leaving the apartment, additionally challenge the district court's denial of their motion to suppress the fruits of their arrests.

After the district court denied their motions, appellants conditionally pleaded guilty to possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Ramires and Chaidez were each sentenced to 120 months of imprisonment and five years of supervised release, and Velarde received eighty-seven months of imprisonment and five years of supervised release.

Because we conclude that appellants did not have a reasonable expectation of privacy in the apartment, and that Ramires and Chaidez were lawfully detained, we affirm the judgment of the district court.

I.

On November 21, 2000, appellants were arrested at an apartment located at 1022 West Koenig Street in Grand Island, Nebraska. At the suppression hearing, Officer Lauren McConnell, Officer Jason Goodwin, and Sergeant Dean Elliott of the Grand Island Police Department testified regarding the circumstances leading to the arrest as follows.

Police were dispatched around 9:00 p.m. in response to two or more calls from residents of the apartment complex complaining of an odor of drugs emanating from the basement apartment. Standing outside the apartment's exterior door, which consisted mostly of glass panes and was covered by a sheer curtain on the inside, police did not smell drugs but did observe at least three people moving around and talking inside. Officer McConnell knocked on the door, and someone on the inside asked him to identify himself. When he identified himself as a police officer, the

individuals inside ran away from the door. McConnell sent another officer around to the other side of the apartment building and radioed for backup.

While waiting for backup to arrive, Officer McConnell heard a noise from the darkness behind him. Shining his flashlight in that direction, he saw Ramires, Chaidez, and Chaidez's brother Hector in a crawlspace that led outside from the apartment. McConnell drew his firearm and told them to freeze. When his backup arrived, McConnell and the other officers instructed the trio in the crawlspace to exit. The officers assisted them to the ground, cuffed their hands behind their backs for the officers' safety, and had them lie face-down on the ground. The three suspects were detained in this fashion for no more than three minutes.

Officer Goodwin entered the crawlspace to determine whether there was anyone else in it. Meanwhile, Sergeant Elliott resumed knocking on the apartment door and shouted that if no one opened it, police would open it by force. Someone then opened the door. Elliott drew his firearm and had the two individuals in the apartment, Velarde and Uriel Lopez, put their hands on their heads and face away from him. From his position at the door, Elliott could see scales, packaging materials, and a large quantity of what appeared to be methamphetamine on the kitchen table. (It was later determined to be more than five pounds of methamphetamine.) At approximately the same time that Elliott gained access to the apartment through the door, Goodwin entered through the crawlspace.

Officer McConnell handcuffed Velarde and Lopez and escorted them out to the area where the other three suspects were being detained. After police verified that there was no one else in the apartment, they placed the five suspects under arrest for possessing controlled substances with intent to distribute.

Velarde testified at the suppression hearing as to why appellants were at the apartment. On the evening in question, Velarde, Ramires, the Chaidez brothers, and

3

Lopez ("the group") were drinking at a Grand Island bar. Jose Lopez ("Jose"), whom Velarde had seen around before but had never previously spoken to, was also at the bar. The group talked with Jose, and he ultimately invited them to his apartment to continue drinking. They drove to his West Koenig apartment, which Jose unlocked. He ushered the group in and then closed and locked the door. The group brought a case or more of Bud Light with them, and Jose showed them where they could sit, drink beer, and watch television. At some point, Jose left the apartment. Approximately an hour or an hour-and-a-half after the group arrived, police began knocking on the apartment door, and the events described above unfolded.

In response to Velarde's testimony, Sergeant Elliott testified that he had looked around the apartment and did not see any beer cans or bottles of any brand in the kitchen, living room, bedroom, or garbage cans.

II.

*A. Appellants had no reasonable expectation of privacy at the apartment.*

In an appeal from the denial of a suppression motion, we review the district court's conclusions of law de novo and its findings of fact for clear error. We must affirm unless the denial of the motion is not supported by substantial evidence in the record, it reflects an erroneous view of the applicable law, or the record as a whole leaves us with the definite and firm conviction that a mistake has been made. See United States v. Booker, 269 F.3d 930, 931-32 (8th Cir. 2001). The district court reviewed the magistrate judge's report de novo, adopted it in its entirety, and denied appellants' motion to suppress the evidence seized from the apartment.

The magistrate judge expressly discredited Velarde's testimony, finding it was not a convincing explanation of why the group was at the apartment. A credibility finding "can virtually never be clear error," see Anderson v. City of Bessemer City,

470 U.S. 564, 575 (1985), and we find no clear error here. Having disbelieved Velarde's story in favor of the inference that appellants were at the apartment to engage in drug activity, the magistrate judge correctly concluded that this case was governed by Minnesota v. Carter, 525 U.S. 83 (1998).[2] In that case, the Supreme Court held that Carter--who went to an apartment with its lessee to package drugs, was there for only a few hours and had no previous relationship with the lessee--had no legitimate expectation of privacy in the apartment. See id. at 85, 90-91.

With the only evidence of a social gathering disbelieved by the fact finder, there is no basis in the record to conclude that the group had a reasonable expectation of privacy at the apartment. Because this analysis alone provides a sufficient basis for affirmance, we need not discuss the magistrate judge's alternative reasoning.

*B. The brief detention of Ramires and Chaidez was a valid Terry stop.*

The district court denied Ramires and Chaidez's motion to suppress the fruits of their arrests, concluding that they were lawfully detained under Terry v. Ohio, 392 U.S. 1, 26-27 (1968) (authorizing investigative detention based on reasonable suspicion). We review de novo the district court's legal conclusion that police had reasonable suspicion justifying a Terry stop, and we review for clear error the district court's findings of fact, giving due weight to the inferences police drew from those facts. See United States v. Dupree, 202 F.3d 1046, 1048 (8th Cir. 2000).

---

[2] We note as an aside that the magistrate judge's disbelief of Velarde's story, in favor of the inference that appellants were at the apartment to engage in drug activity, was later shown to be correct. In their statements to the probation officer who prepared the presentence investigation report, Ramires said that Jose was going to give him one-and-a-half pounds of methamphetamine to sell, and Chaidez claimed ownership of one-and-a-half pounds of the methamphetamine at Jose's apartment.

We agree with the district court that the facts of the instant case justified a Terry stop: it was late at night, the suspects emerged from the crawlspace in a dimly lit area where Officer McConnell needed to use his flashlight to see them, and police were investigating drug activity, which frequently involves weapons. See United States v. Roggeman, 279 F.3d 573, 578-79 (8th Cir. 2002) (listing factors), petition for cert. filed, 71 U.S.L.W. 3093 (U.S. June 27, 2002) (No. 02-22); United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002) (firearms are used in drug trafficking for protection and intimidation). We also agree that when suspects suddenly flee from police, as Ramires and Chaidez did by running away from the door and entering the crawlspace when McConnell knocked, the justification for a Terry stop is heightened. See United States v. Thompkins, 998 F.2d 629, 633 (8th Cir. 1993).

A Terry stop that is justified at its inception must also be sufficiently limited in scope and duration, see Florida v. Royer, 460 U.S. 491, 500 (1983), and we agree with the district court that Ramires's and Chaidez's detention was sufficiently limited. The permissible scope of the detention was not exceeded when police ordered them out of the crawlspace at gunpoint and handcuffed them, see United States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999) (approving of Terry stop in which police approached drug suspect with their guns drawn and handcuffed him), or when police kept them detained for the three minutes or less it took to enter and secure the apartment, cf. United States v. Lebrun, 261 F.3d 731, 734 (8th Cir. 2001) (approving of Terry stop of drug suspect lasting twenty minutes).

## III.

For the reasons discussed above, we affirm the judgment of the district court.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.