# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1957

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Lee T. Newell, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: February 12, 2010
Filed: March 2, 2010

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Lee T. Newell pled guilty to one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1), and one count of criminal forfeiture under 21 U.S.C. § 853. In his plea agreement, Newell reserved the right to appeal the denial of his motion to suppress. Newell also appeals his sentence. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

Sometime before February 2008, a confidential informant told Officer Joseph E. Baudler of the Omaha Police Department about a black male called Libra or Libray. The CI, who had provided useful information to Officer Baudler in the past, told him that this man was selling crack cocaine in a specific area of town, that he drove a white Cadillac with heavily-tinted windows with license plate number OOF 910, and that he lived with a handicapped white woman. Officer Baudler went to the neighborhood where the CI said the man lived. Speaking with residents there, Officer Baudler determined that Lee Newell was the person the CI was referring to. Officer Baudler showed Newell's photo to the CI, who confirmed that he was the person selling crack cocaine called Libra or Libray.

On the evening of March 18, 2008, the CI contacted Officer Baudler to say that he had seen Newell around an intersection that night with crack cocaine in his Cadillac. At 10:40 p.m., Officer Baudler, accompanied by Officer Kaylon Fancher, located the Cadillac parked on the side of the street with its headlights on. The officers pulled their marked cruiser behind the Cadillac. Officer Baudler approached the passenger side of the Cadillac while Officer Fancher approached the driver's side. Because of the heavily-tinted windows, the officers could not see inside the vehicle or its occupant.

Opening the driver's door, Officer Fancher told Newell to identify himself and to put his hands on the steering wheel. Officer Fancher could see Newell's left hand on the steering wheel, but could not see his right hand and believed it was reaching for something. Officer Baudler then opened the passenger door, reached in, and grabbed Newell's right arm. The officers removed Newell through the driver's side.

Once outside the vehicle, Officer Baudler observed a plastic bag protruding from Newell's right coat pocket. Believing it contained cocaine, Officer Baudler

removed the bag from Newell's pocket and verified that it did contain what looked like cocaine. Newell was then handcuffed. After asking Newell if there was anything else on him, Newell responded there was. A second bag of cocaine was found in his pants pocket. Officer Fancher also found $2,973 on him. After taking Newell to the police station and advising him of his *Miranda* rights, he provided consent to search his house, where additional contraband was found.

## II.

Newell appeals the denial of his motion to suppress the evidence found on the night of his arrest. The district court[1] determined that the officers' initial contact with Newell was an investigative detention supported by reasonable suspicion of criminal activity. The court also found that the officers' act of removing Newell from the Cadillac after observing his right hand reaching for something was justified by officer safety. Finally, the district court determined that probable cause existed to arrest Newell when Officer Baudler saw, in plain view, a bag of cocaine sticking out of Newell's pocket.

In reviewing a ruling on a motion to suppress, this court reviews "for clear error the district court's findings of fact, giving due weight to the inferences police drew from those facts." *United States v. Ramires*, 307 F.3d 713, 716 (8th Cir. 2002). This court reviews de novo the district court's legal conclusion that reasonable suspicion or probable cause existed. *United States v. Donnelly*, 475 F.3d 946, 951 (8th Cir. 2007). "We will affirm the denial of a suppression motion unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the

---

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendations of the Honorable F.A. Gossett, III, United States Magistrate Judge for the District of Nebraska.

Court is left with a firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

"An investigatory, or *Terry*, stop without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot." **United States v. Navarrete-Barron**, 192 F.3d 786, 790 (8th Cir. 1999), *citing* **Terry v. Ohio**, 392 U.S. 1, 25-31 (1968). Officers must use "the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop." **Id.** A *Terry* stop may become an arrest, requiring probable cause, "if the stop lasts for an unreasonably long time or if officers use unreasonable force." **Id.** However, as part of a lawful *Terry* stop, officers may take any measures that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." **United States v. Hensley**, 469 U.S. 221, 235 (1985).

Newell does not argue that the officers lacked reasonable suspicion to conduct an investigative detention on the night of March 18. Rather, he contends the officers' conduct of opening the car doors, ordering him to place his hands on the steering wheel, and grabbing his right arm, was an unreasonable use of force. Newell suggests that the officers should have first tried to get his attention to see if he would roll his window down and talk with them, and then ask him to step out of the car where he would not have access to weapons. He argues that because the officers did not use the least intrusive means, the initial encounter was an arrest, requiring probable cause.

This court concludes that the officers acted reasonably and within the confines of a *Terry* stop when they opened the Cadillac's door to view Newell and told him to place his hands on the steering wheel. In *United States v. Navarrete-Barron*, officers had reasonable suspicion that the occupants of a truck were trafficking in drugs. **Navarrete-Barron**, 192 F.3d 786, 790-91 (8th Cir. 1999). Based on this suspicion, the officers stopped the truck, approached with their weapons drawn, ordered the

occupants out with their hands in the air, and handcuffed them. *Id.* at 789. Relying on the facts that drug traffickers often possess dangerous weapons and that the officers had some basis to believe the occupants had a 9-millimeter handgun, this court held that the officers were justified in approaching the truck with their guns drawn because it was reasonably necessary for their personal safety. *Id.* at 791.

Similarly, in *United States v. Ramires*, this court held that officers did not exceed the bounds of a *Terry* stop based on a reasonable suspicion of drug manufacturing, when they ordered the defendants out of a crawl space at gunpoint and handcuffed them. **Ramires**, 307 F.3d at 716. This court again noted that drug trafficking is often accompanied by dangerous weapons. *Id.*, *citing* **United States v. Linson**, 276 F.3d 1017, 1019 (8th Cir. 2002) ("Firearms are the tools of the drug trade providing protection and intimidation."). *See also* **United States v. Claxton**, 276 F.3d 420, 423 (8th Cir. 2002) ("There is a close and well-known connection between firearms and drugs . . . . Firearms are known tools of the trade of narcotics dealing because of the dangers inherent in that line of work.") (internal citation and quotation marks omitted).

Approaching the Cadillac, Officers Baudler and Fancher could not see inside because of the heavily-tinted windows. While they lacked specific information that Newell was armed, as discussed, dangerous weapons are often used by drug traffickers. The officers were not required to hope Newell was not arming himself behind the heavily-tinted windows while they asked him to roll down the window or step out of the Cadillac. *See* **Terry**, 392 U.S. at 33 (Harlan, J., concurring) ("There is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet."). Their actions were more limited in scope than those upheld in *Navarrete-Baron* and *Ramires*. Therefore, the officers' acts of opening the car doors and instructing Newell to put his hands on the steering wheel were justified for their protection. When Newell failed to comply with their instruction to place both hands

-5-

on the steering wheel and was observed reaching for something with his right hand, the officers acted reasonably by grabbing his right arm and removing him from the vehicle. The district court did not err in concluding that the officers did not exceed the bounds of a *Terry* stop.

Removing Newell from the car, Officer Baudler saw a bag of cocaine hanging out of Newell's pocket. Seeing evidence of a crime provided probable cause to arrest Newell. *See United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir. 1994) ("Probable cause to make a warrantless arrest exists when police officers have trustworthy information that would lead a prudent person to believe that the suspect has committed a crime."); *United States v. Pennington*, 287 F.3d 739, 747 (8th Cir. 2002) (plain view of drug activity provides probable cause to arrest). The district court did not err in holding the officers had probable cause to arrest Newell after seeing contraband in plain view. Newell's motion to suppress was properly denied.

## III.

Newell also appeals his 240-month sentence, arguing it is substantively unreasonable because it is greater than necessary to promote the goals of 18 U.S.C. § 3553(a). This court will "review a criminal sentence for reasonableness, 'first ensur[ing] the district court committed no significant procedural error, such as . . . improperly calculating the Guidelines range,' and then considering the sentence for substantive reasonableness under an abuse of discretion standard." *United States v. Spikes*, 543 F.3d 1021, 1023 (8th Cir. 2008), *quoting Gall v. United States*, 552 U.S. 38, 51 (2007).

Newell does not challenge that he is a career offender under 28 U.S.C. § 994(h). The district court determined the advisory Guideline range as 262 to 327 months. The court varied downward, imposing a sentence of 240 months. Newell contends that the district court erred when it "did not consider the other [18 U.S.C.] § 3553(a) factors

to be on equal footing with the Guidelines" and failed to address his argument that the Career Offender Guidelines should receive little weight because they produce sentences greater than necessary to comply with federal sentencing concerns. He argues that the Career Offender Guidelines "were not developed with the goal of achieving the objectives of § 3553(a), and therefore do not yield an appropriate sentence even in a mine-run case."

Newell contends the district court presumed the Career Offender Guidelines set a reasonable sentencing range, in violation of *Gall v. United States*, and the slightly reduced sentence did not recognize the flaw in the Career Offender Guidelines. *See Gall*, 552 U.S. at 50 (district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented."). The sentencing record shows no such presumption. Rather, the district court properly calculated the Guideline range. It then considered the factors in 18 U.S.C. § 3553(a), including Newell's age, ability to work at gainful employment, and his care of his dependent wife. The court also noted the seriousness of the offense and Newell's criminal history, which it characterized as "lengthy and serious." The district court acknowledged Newell's argument that the Career Offender Guidelines result in "extraordinary sentences." The district court did not abuse its discretion in sentencing Newell to 240 months.

## IV.

The judgment of the district court is affirmed.

_____