# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1894

_____

United States of America

*Plaintiff - Appellee*

v.

Terrence Lamar Hawkins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 9, 2016
Filed: July 26, 2016

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Lincoln University ("LU") police officers detained and searched Terrence Hawkins in the student cafeteria on two occasions in early 2011. Both times, they discovered he was carrying a loaded pistol. Hawkins was indicted and convicted of being a felon in possession of two firearms, violations of 18 U.S.C. § 922(g)(1). He

appeals the district court's[1] denial of his pretrial motion to suppress the firearms seized during the two searches. We affirm.

## I. The First Search and Seizure.

On February 24, 2011, LU Police Chief Bill Nelson and three fellow officers -- Greg McKinney, Kevin Pigford, and Damon Nunn -- gathered for lunch at LU's student cafeteria. They noticed a man seated alone (later identified as Hawkins), who appeared intoxicated and was not eating. Neither the officers nor students they asked recognized Hawkins. Chief Nelson and Officer Nunn approached Hawkins and asked for identification. He was unkempt, his eyes were bloodshot, and he smelled of alcohol. As Hawkins retrieved his identification, Chief Nelson saw a large amount of cash in Hawkins's wallet. While Officer Nunn requested a records check from dispatch, Chief Nelson asked Hawkins if he was an LU student. Hawkins replied, in slurred speech, that he had "been a student off and on." Minutes later, Officer Nunn reported that Hawkins was not a student, had a criminal history, and was known to be armed. Meanwhile, Officer McKinney telephoned Probation and Parole and learned that Hawkins had a prior felony conviction.

At this point, Hawkins stood up but complied when Chief Nelson and Officer Pigford instructed him to be seated. When Hawkins stood, Officers Nunn and Pigford noticed a bulge in his left pants pocket and told Chief Nelson they were concerned the bulge was a weapon. The Chief asked Hawkins what was in his pocket. Hawkins said it was money. The Chief replied that he had seen Hawkins's money in his wallet. Hawkins then said the bulge was "nothing." Officer Nunn asked if he could retrieve the item from the pocket. Hawkins refused. Chief Nelson then told Hawkins they

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable Matt J. Whitworth, United States Magistrate Judge for the Western District of Missouri.

were going to search his pocket for the safety of the officers and those in the cafeteria. As Officer Nunn motioned or reached "to check the pocket," Hawkins bolted. The officers tackled and restrained him. In the process, Officer McKinney felt a hard object from outside Hawkins's left pants pocket, reached into the pocket, and pulled out a loaded handgun and marijuana.

Hawkins moved to suppress this evidence, arguing the officers did not have reasonable suspicion to detain him after they discovered he was not a student, and they illegally searched his pocket. The district court denied the motion, ruling that: (i) Hawkins's interaction with the officers was consensual up to the point the officers ordered him to be seated; (ii) at that point, the encounter became an investigative stop under Terry v. Ohio, 392 U.S. 1 (1968); (iii) the officers had reasonable suspicion to detain Hawkins when he attempted to flee; and (iv) at this point, the officers had acquired reasonable suspicion to believe Hawkins "was armed and dangerous" to justify a weapons search under Terry.

On appeal, Hawkins challenges none of these rulings, conceding that the Terry stop was permissible. He contends, however, that the stop became a *de facto* arrest when the officers "threatened" and "attempted" an unconstitutional search -- namely, "reaching into his pocket" before conducting a pat-down search to determine if he was in fact armed and dangerous. He argues that this alleged arrest was not supported by probable cause; thus, "any evidence seized following that point must be excluded as fruit of the unconstitutional arrest." We review *de novo* whether the detention amounted to an arrest, but review findings "as to what the parties said or did" for clear error. United States v. Bloomfield, 40 F.3d 910, 916, 918 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995).

Hawkins's argument assumes that the officers intended to forego a pat-down search when Officer Nunn reached toward Hawkins's pocket. But the record is not so clear. Officer Nunn's hand never reached Hawkins's pocket, so what would have

-3-

happened had Hawkins not fled is hypothetical. Consistent with Chief Nelson's testimony, the district court simply found that "the Chief told [Hawkins] that they were going to search his pockets." Hawkins's argument also rests on the erroneous legal premise that a pat down is the only permissible way to conduct a Terry frisk. A Terry search must be "reasonable" under the circumstances, see Terry, 392 U.S. at 29; "officers may take any measures that are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." United States v. Newell, 596 F.3d 876, 879 (8th Cir.) (quotation omitted), cert. denied, 562 U.S. 864 (2010). Though a pat-down is often the least intrusive way to search for a hidden firearm, concern for officer safety may justify lifting clothing or even reaching directly for a weapon in a waistband. See, e.g., Adams v. Williams, 407 U.S. 143, 144-48 (1972); United States v. Baker, 78 F.3d 135, 137-38 (4th Cir. 1996); United States v. Hill, 545 F.2d 1191, 1193 (9th Cir. 1976) (per curiam).

Thus, the question is whether the officers' threat to perform a protective search, when they had reasonable suspicion that Hawkins was armed and dangerous, coupled with a reach, transformed the lawful Terry stop into a full-blown arrest. A "Terry stop may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." Newell, 596 F.3d at 879 (quotation omitted). Here, the district court found that the detention was "fairly brief" and lasted "only for the period of time necessary to resolve [Hawkins's] suspicious behavior." Hawkins was not touched until he attempted to flee this lawful detention. None of the usual indicators of a *de facto* arrest are present -- Hawkins was not handcuffed, isolated, moved to a cop car, or humiliated in any way. See Bloomfield, 40 F.3d at 917.

Hawkins cites no case -- and we have found none -- ruling that a threat to search and a reach transformed a Terry stop into an arrest. The three cases he relies on all involved *actual* searches of the defendant, and none involved reasonable suspicion that the suspect was armed. See Sibron v. New York, 392 U.S. 40, 62-63

-4-

(1968); <u>United States v. Aquino</u>, 674 F.3d 918, 926-27 (8th Cir. 2012); <u>United States v. Casado</u>, 303 F.3d 440 (2d Cir. 2002).  In these circumstances, we decline to adopt Hawkins's proposed rule that a threat to perform a search constitutes a *de facto* arrest. We affirm the denial of his motion to suppress evidence seized in the first search.

## II. The Second Search and Seizure.

After Hawkins was arrested on February 24, Officer McKinney orally warned him that he could not trespass on LU grounds in the future.  One month later, on March 24, LU police officers, including Officers Nunn, McKinney, and Pigford, responded to a report that Hawkins was again in the LU student cafeteria.  Finding Hawkins in the same seat he occupied a month earlier, the officers arrested Hawkins for violating Missouri trespass law, Mo. Rev. Stat. § 569.140.  A search incident to the arrest uncovered a loaded handgun, the firearm charged in the second count of conviction.  Hawkins argues the firearm should be suppressed because he had no valid prior notice that his mere presence on the LU campus would constitute criminal trespass.

The Missouri trespass statute provides:

1. A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property.

2. A person does not commit the crime of trespass in the first degree by entering or remaining upon real property unless the real property is fenced or otherwise enclosed . . . or as to which notice against trespass is given by:

    (1) *Actual communication to the actor . . .*

§ 569.140(1)-(2) (emphasis added). It is undisputed that Hawkins received an oral no-trespass notice on February 24. Accordingly, the district court ruled that the officers had probable cause to arrest Hawkins on March 24 for violating § 569.140, and that the search incident to his arrest was valid. We review the district court's factual findings for clear error and its determination of probable cause *de novo*. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

Consistent with the plain language of the statute, the Missouri Court of Appeals held in State v. McCarthy, 715 S.W.2d 337, 337-38 (Mo. App. 1986), that an oral warning not to trespass on Washington University's campus was sufficient evidence to sustain a § 569.140 conviction. But a published LU policy provided that an oral no-trespass order expires after five days. Therefore, Hawkins argues, as he did in the district court, the search incident to his arrest was invalid because "Mr. Hawkins could not violate a no trespass order that, per written university policy, ceased to be effective five days after it was issued."

This contention ignores the fact that the issue is whether the police officers had probable cause to arrest Hawkins for violating § 569.140, not whether he would have been convicted for violating the statute. Cf. Heien v. North Carolina, 135 S. Ct. 530, 536 (2014); Michigan v. DiFillippo, 443 U.S. 31, 37-38 (1979). When asked at the suppression hearing about the policy (which neither counsel made part of the record on appeal), Chief Nelson testified that he had been previously advised by the local county prosecutor that an oral no-trespass order "is sufficient. It's as good as a written no trespass order. And so that's the policy that we current[ly] follow." Officer McKinney, one of the arresting officers, confirmed that testimony.

The criminal trespass statute required "[a]ctual communication" to Hawkins. The arresting officers knew that Hawkins had prior actual oral notice that he could not lawfully enter or remain on the LU campus. The local prosecutor had advised the LU police that oral notice is "as good as a written no trespass order" in enforcing the

trespass statute on campus.  When confronted, Hawkins, a non-student, did not object that the LU five-day policy precluded his arrest.  In these circumstances, we conclude the district court did not err when it ruled that the officers had probable cause to arrest Hawkins and to conduct a search incident to arrest that uncovered the firearm, and therefore that Hawkins's motion to suppress should be denied.

The judgment of the district court is affirmed.

_____