United States Court of Appeals

For the Eighth Circuit

_____

No. 16-3613

_____

David L. Hosea

*Plaintiff - Appellant*

v.

City of St. Paul; Officer Eric Stevens; Officer Richard McGuire

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 11, 2017
Filed: August 14, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

SMITH, Chief Judge.

On April 28, 2014, Officers Eric Stevens and Richard McGuire responded to a 911 hang-up call and arrested David Hosea at the scene. Hosea brought unlawful-arrest and excessive-force claims against the officers. The district court[1] granted the

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

officers' motion for summary judgment, holding that the officers were entitled to qualified immunity on both of Hosea's Fourth Amendment claims. For the reasons explained below, we affirm.

## I. *Background*

On the evening of April 28, 2014, David Hosea was arguing with his then-girlfriend, Jennifer Steines, in their home. The argument escalated; Hosea dialed 911 but hung up before speaking to an operator. St. Paul police dispatch sent Officers Stevens and McGuire to investigate. The officers parked their squad car two houses away and upon exiting their car, they immediately heard yelling from the residence. As the officers approached the residence, they saw a sign directing visitors to "[p]lease use [the] back door." The officers proceeded to the back door, found the rear entry doors unlocked and, without knocking or announcing themselves, entered the residence.

Hosea was standing over Steines from approximately three feet away as Steines sat on the couch crying. Hosea heard the "door go boom" when the officers entered the residence and turned toward the noise. The officers testified that Hosea seemed agitated, addressed the officers in a loud voice, appeared ready to fight, and displayed indicators of aggression, including a "bladed" stance, clenched fists, and flared nostrils.

According to Hosea, he saw the officers but did not initially recognize them as police officers. Hosea asked, "Who is you-all?" The officers replied, "You get down," to which Hosea responded, "Why?" The officers ordered Hosea a second time to get on the ground, and Hosea again asked, "For what?" Hosea's son entered the room and said, "They police." Hosea then recognized that Stevens and McGuire were police officers and told them that he had a leg injury as he began to lower himself to the

ground. Hosea had his left knee and right hand on the ground when, according to Hosea, one of the officers "tackled" him or "jumped on [his] back" and forced him to the ground. As a result, Hosea injured his right hand. The officers handcuffed Hosea and transferred him to the squad car. It is undisputed that Hosea offered no physical resistance.

After transferring Hosea to the car, the officers uncovered more about the heated dispute that precipitated their dispatch to the scene. A domestic dispute between Steines and Hosea apparently went from verbal to physical when Steines hit Hosea in the face with a slipper. The officers learned that Steines had actually never been afraid of Hosea. Hosea was charged with obstructing legal process. After he was released the next day, Hosea went to a doctor and learned that his right hand was fractured and required surgery. The obstruction charges were eventually dismissed.

Hosea brought this action against the City of St. Paul and Officers Stevens and McGuire in their individual and official capacities.[2] Hosea alleged that the officers violated his Fourth Amendment rights by arresting him without probable cause and using excessive force when arresting him. Hosea also brought state-law claims for battery, false arrest, and false imprisonment. The officers moved for summary

---

[2]The district court dismissed the official-capacity claims against the officers. The court noted that official-capacity claims against government officials are functionally equivalent to claims against the municipality. And because liability exists only when an entity's policy or custom was the "moving force" behind the allegedly unlawful conduct, *see Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013) (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)), the court held that Hosea failed to state a claim against the officers in their official capacities: "Hosea has not even *alleged* that a City policy or custom was the moving force behind the officers' allegedly unlawful acts, let alone cited any evidence to support such an allegation."

judgment and the district court held that the officers were entitled to qualified immunity on Hosea's constitutional claims.[3]

The court held that the officers were entitled to qualified immunity on Hosea's unlawful-arrest claim because "arguable probable cause supported Hosea's arrest for, among other things, domestic assault."[4] The court noted that, under Minnesota law, "domestic assault is an act committed with intent to cause fear of immediate bodily harm or death in a family or household member." (Citing Minn. Stat. § 609.2242, subd. 1(1).) Hosea argued that probable cause was lacking because the officers did not know why Steines was crying and later learned that Steines was not afraid of Hosea. The court rejected this argument because "the reasons behind the altercation do not undermine Hosea's objective appearance to the officers when they entered his home." Hosea "was standing over Steines from only three feet away—striking distance—as they argued" with "his hands down at his side, his fists balled up," blocking the officers' view of Steines. "On these facts," the district court "determine[d] that an officer reasonably could have concluded Hosea was acting with intent to cause a household member fear of imminent bodily harm."

---

[3]After dismissing Hosea's federal claims, the district court declined to exercise supplemental jurisdiction over Hosea's state-law claims and dismissed these claims without prejudice. We need not discuss Hosea's state-law claims because the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over these claims. *See Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016), *petition for cert. filed*, (U.S. June 30, 2017) (No. 17-22) ("A district court has broad discretion to decline to exercise supplemental jurisdiction over state law claims after all claims over which the district court had original jurisdiction have been dismissed.").

[4]Because the court determined that arguable probable cause supported Hosea's arrest for domestic assault, the court did not consider whether arguable probable cause existed to arrest Hosea for obstructing legal process.

The court also held that the officers were entitled to qualified immunity on Hosea's excessive-force claim because "[c]onsidering the totality of the circumstances, a reasonable officer in such a situation could have feared for his own safety, as well as Steines's." At the district court, Hosea argued that the use of force was unreasonable because the officers never orally identified themselves and "he had begun complying with the officers' order to get on the ground when one of the officers 'tackled' him or 'jumped on his back.'" The court held that the lack of oral self-identification did not render the use of force objectively unreasonable. Because Hosea did "not dispute that he addressed the officers with clenched fists and in the same loud tone with which he addressed his girlfriend" and "it is undisputed that Hosea ignored the officers' initial commands to 'get on the ground,'" the court concluded there was "no genuine issue regarding the reasonableness of the officers' use of force to secure Hosea."

On appeal, Hosea argues that the officers are not entitled to qualified immunity on his unlawful-arrest claim because the officers did not have arguable probable cause to arrest him for either obstruction of legal process or domestic assault. Also, Hosea argues that the officers are not entitled to qualified immunity on his excessive-force claim because he did not commit a crime in the officers' presence, he did not pose a threat to the safety of the officers or others, he was not resisting arrest, the officers failed to identify themselves, and he started complying before the officers exerted force.

## II. *Discussion*

We apply a two-part test to determine the applicability of qualified immunity. *Clayborn v. Struebing*, 734 F.3d 807, 809 (8th Cir. 2013). "First, 'whether the facts alleged, construed in the light most favorable to [Hosea], establish a violation of a constitutional or statutory right,' and second, 'whether that right was clearly established at the time of the alleged violation, such that a reasonable [officer] would

-5-

have known that [the] actions were unlawful.'" *Id.* (quoting *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011)). "We review a district court's qualified immunity determination on summary judgment *de novo*, viewing the record in the light most favorable to [Hosea] and drawing all reasonable inferences in [his] favor." *Meehan v. Thompson*, 763 F.3d 936, 940 (8th Cir. 2014) (quoting *Shannon v. Koehler*, 616 F.3d 855, 861–62 (8th Cir. 2010)). In this light, we affirm the district court and hold that the officers had arguable probable cause to arrest Hosea for domestic assault and that the force used in effectuating his arrest was not constitutionally excessive.

## A. *Unlawful Arrest*

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008–09 (8th Cir. 2017) (internal quotation marks omitted) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)). Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense. *Id.* at 1009. "Arguable probable cause exists even whe[n] an officer mistakenly arrests a suspect believing [the arrest] is based in probable cause if the mistake is objectively reasonable." *Id.* (internal quotation marks omitted) (quoting *Borgman*, 646 F.3d at 523); *see also Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) ("[S]o long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.'" (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)). "Under this 'objective legal reasonableness standard,' courts may not delve into the officers' subjective motivation for their actions." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989)).

Probable cause is a question of law that is determined at the moment the arrest is made, and "any later developed facts are irrelevant to the probable cause analysis." *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016) (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)); *see also Joseph*, 712 F.3d at 1226 ("The fact that the person arrested is later found innocent is not material."). But "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence." *Gilmore*, 837 F.3d at 833 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). "When an officer is faced with conflicting information that cannot be immediately resolved, however, he may have arguable probable cause to arrest a suspect." *Borgman*, 646 F.3d at 523; *see id.* ("In considering information given by a victim of a crime, an officer need not conduct a 'mini-trial' before effectuating an arrest although he cannot avoid 'minimal further investigation' if it would have exonerated the suspect." (quoting *Kuehl*, 173 F.3d at 650)).

In Minnesota, domestic assault is an act committed "against a family or household member . . . with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.2242, subd. 1(1). The undisputed facts known to the officers at the time of Hosea's arrest were as follows: someone from the residence called 911 and hung up; the officers heard a heated argument inside the residence while standing outside; upon entry the officers saw Steines crying on the couch; Hosea was yelling at Steines; Hosea was standing over Steines from only three feet away, obstructing the officers' view of Steines; and Hosea did not immediately comply with the officers' orders to get on the ground.

Hosea argues that the officers lacked probable cause to arrest him because they did not know why Steines was crying when they entered the residence and the officers later learned that Steines was not in fear of immediate bodily harm. Both arguments fail. First, without knowing why Steines was crying, a reasonable officer on the scene could have concluded that she placed the 911 call and was crying because Hosea made her fearful of imminent bodily harm. Second, arguable probable cause is determined

at the time of arrest and after-acquired knowledge is irrelevant to the analysis. *Gilmore*, 837 F.3d 833–34.[5] Thus, the officers had arguable probable cause to arrest Hosea for domestic assault and are entitled to qualified immunity on Hosea's unlawful-arrest claim.[6]

---

[5]Hosea argues that the officers were merely conducting a *Terry* stop when they seized him, and that he was not actually "arrested" until after the officers conducted their subsequent investigation. *See Terry v. Ohio*, 392 U.S. 1 (1968). We disagree. Being ordered to the ground, handcuffed, and transferred to a police vehicle are consistent with an arrest—not a mere investigative stop. *Cf. United States v. Hawkins*, 830 F.3d 742, 745 (8th Cir. 2016). Thus, all information uncovered during the investigation was acquired after Hosea's arrest. While officers are not free to disregard plainly exculpatory evidence, arguable probable cause may still exist when conflicting information cannot be immediately resolved. *See Gilmore*, 837 F.3d at 833. Here, the subsequent investigation did not uncover any plainly exculpatory evidence because an objectively reasonable officer on the scene could have decided that Steines's statement conflicted with the undisputed facts known at the time of arrest.

[6]The fact that the officers decided to arrest Hosea for obstructing legal process instead of domestic assault is immaterial. "[A]n officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Because we hold that there was arguable probable cause to arrest Hosea for domestic assault, we need not address whether there was arguable probable cause to arrest Hosea for obstructing legal process. Regardless of the ultimate offense charged, probable cause to arrest an individual exists if the facts known to the officer establish probable cause to arrest for *any* violation of law. *Id.* ("[T]he Supreme Court examined probable cause in the context of an arrest and held that even if an officer invokes the wrong offense at the time of an arrest, probable cause for the arrest still exists as long as the facts known to the officer would provide probable cause to arrest for the violation of some other law."); *see also Devenpeck*, 543 U.S. at 153–56.

B. *Excessive Force*

Force is constitutionally excessive if it is objectively unreasonable. *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006). Determining whether the force used was objectively unreasonable "requires balancing of the individual's Fourth Amendment interests against the relevant government interests." *Cty. of L.A. v. Mendez*, 137 S. Ct. 1539, 1546 (2017). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "We thus 'allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). And we assess the amount of force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).

We pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Malone v. Hinman*, 847 F.3d 949, 952–53 (8th Cir. 2017), *petition for cert. filed*, (U.S. July 17, 2017) (No. 17-80) (noting the *Graham* factors). "'Not every push or shove . . . violates the Fourth Amendment,' but force is excessive when the officers' actions are not 'objectively reasonable in light of the facts and circumstances confronting them.'" *Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009) (quoting *Graham*, 490 U.S. at 396–97). "Moreover, it is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).

Hosea argues that the force used was objectively unreasonable because he did not commit a crime in the presence of the officers, did not pose a threat to the safety of the officers or others, and was not actively fleeing or resisting arrest because he complied with the officers' commands. We disagree. Viewing the facts most favorably to Hosea and giving him the benefit of all reasonable inferences, we think that the three factors identified in *Graham* weigh in favor of finding the force used was objectively reasonable.

As discussed above, a reasonable officer on the scene could have concluded that Hosea had committed or was committing domestic assault—a crime that threatens the safety of another individual. *See* Minn. Stat. § 609.2242, subd. 1(1). Thus, the first two *Graham* factors favor the officers' use of force.

As to the third *Graham* factor, Hosea argues that the force was objectively unreasonable because an officer on the scene could not reasonably think that he was resisting arrest. First, Hosea does not dispute that he initially failed to comply with the officers' commands—he claims that a reasonable officer could not think this initial noncompliance was resistance because the officers failed to identify themselves. Hosea relies on *Atkinson*, 709 F.3d at 1210–11, for his assertion that it is objectively unreasonable for officers who fail to identify themselves to think that an individual's initial noncompliance is resistance. This misstates our holding in *Atkinson*.

In *Atkinson*, a plain-clothes officer "bull rushed" Atkinson after he failed to return a cell phone to the officer. *Id.* at 1205. We determined that the officer could not reasonably believe that Atkinson committed a severe or violent crime (the first *Graham* factor), and the officer could not reasonably believe that Atkinson posed a threat to the safety of the officer or others (the second *Graham* factor). *Id.* at 1210. As

-10-

to the third *Graham* factor, we held: "A reasonable officer in [the officer's] position—*without either of the first two* Graham *factors justifying a forceful arrest*—would not have thought it appropriate to charge Atkinson without *first* identifying himself as a law enforcement official and giving Atkinson a chance to return the cell phone peacefully." *Id.* (first emphasis added). "Objectively, when [the officer] told Atkinson to return the cell phone, [the] request was not the demand of a peace officer, but the plea of an 'irate' civilian." *Id.* Accepting as true that Atkinson "was unaware of a police presence until well after [the officer] used force," the officer "could not reasonably think Atkinson was resisting arrest." *Id.* Thus, we held that under these circumstances, the use of force was not objectively reasonable. *Id.*

The officers' lack of self-identification to Hosea meaningfully differs from that in *Atkinson*. First, as a factual matter, Hosea does not dispute that the officers wore uniforms or that their jackets bore badges—he simply did not *notice* their badges and did not initially recognize they were police officers. This contrasts materially with the plain-clothes officer in *Atkinson*. Second, the first two *Graham* factors justifying a forceful arrest are satisfied in this case. Thus, the holding in *Atkinson*, which hinged on the absence of these *Graham* factors, is inapplicable.[7]

Second, Hosea argues that even if a reasonable officer could think that his initial noncompliance was resistance, exerting force after he began to lower himself to the ground was objectively unreasonable. Contrary to Hosea's assertion, the fact that the force was exerted after he began to comply does not necessarily render the force objectively unreasonable. Although Hosea had his left knee and right hand on the ground when the officers exerted force, Hosea was not fully on the ground and

---

[7]Hosea also relies on *Small v. McCrystal*, 708 F.3d 997 (8th Cir. 2013), in which an officer tackled an arrestee from behind with no warning. In *Small*, like in *Atkinson*, our holding hinged on the absence of the first two *Graham* factors. *See id.* at 1005–06. Thus, *Small* is also inapplicable.

-11-

was still near Steines. Because he was not fully on the ground, a reasonable officer on the scene could have concluded that Hosea's partial compliance was passive resistance. *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006) ("When a suspect is passively resistant, somewhat more force may reasonably be required."); *see also Brossart v. Janke*, 859 F.3d 616, 626 (8th Cir. 2017) (holding deployment of taser not excessive when arrestee's "response to the command was classically passive aggressive—he moved mere inches"); *Mann v. Yarnell*, 497 F.3d 822, 824 (8th Cir. 2007) ("The officers testified that they ordered Mann to come under a fence, get down on his stomach, and put his hands behind his back. Although Mann moved to the designated location, he neither got down on his stomach nor placed his hands behind his back, causing the officers to believe that he was resisting arrest."). Because a reasonable officer on the scene could have believed that Hosea was passively resistant even after he began to lower himself to the ground, the third *Graham* factor also favors the officers' use of force.

We also note that even if the officers mistakenly believed that Hosea was resisting arrest after he began to lower himself to the ground, the use of force was still objectively reasonable because a reasonable officer on the scene could have concluded that Hosea still posed a threat to Steines's safety. *Graham* specifically contemplates that officers may consider the suspect's potential to harm others when deciding whether to use force in effecting an arrest. 490 U.S. at 396. We have concluded that the officers were justified in making an arrest and that the concern for Steines's safety justified a reasonable use of force in effecting that arrest. On these facts, we agree with the district court that the amount of force used was not objectively unreasonable considering the facts and circumstances of this particular case. *See id.*

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, concurring in part and dissenting in part.

Because I believe there is a genuine issue of material fact as to whether the officers used excessive force against Hosea, I respectfully dissent from Part II.B of the court's opinion. Viewing the facts in the light most favorable to Hosea and "giving him the benefit of all reasonable inferences," Atkinson, 709 F.3d at 1210, each Graham factor weighs in his favor.

First, although Hosea testified in his deposition that he and Steines were arguing and that Steines was crying when the officers entered, there was no indication that Hosea had committed any physical violence against Steines. See id. (concluding the first Graham factor weighed in favor of the plaintiff because he "had not committed any 'severe or violent crime.'" (quoting Brown, 574 F.3d at 496)). Second, no reasonable officer could have concluded that Hosea "pose[d] an immediate threat to the safety of the officers or others." Graham, 490 U.S. at 396. The officers tackled Hosea *after* he had begun to lower himself to the floor, three feet away from where Steines sat. Even if it was hypothetically possible for Hosea to stand back up and attack Steines, a reasonable officer would not have believed this mere possibility represented a realistic, immediate threat to Steines' safety. Finally, no reasonable officer would have concluded Hosea was "actively resisting arrest." Id. Hosea testified he had already put his left knee and right hand on the floor when the officers tackled him. The court concludes that because Hosea was not yet completely on the floor, the officers could have believed he was passively resisting arrest. I disagree that a reasonable officer would think Hosea's seconds-long delay in fully reaching the floor—after informing the officers of his leg injury—constituted any form of resistance.

"It is the province of the jury to assess the credibility of the evidence, and if the jury accepts [Hosea's] account, it could fairly conclude that" the officers used

-13-

excessive force against him.  <u>Brown</u>, 574 F.3d at 500; <u>see also</u> <u>Smith v. Kan. City Police Dep't</u>, 586 F.3d 576, 582 (8th Cir. 2009) ("At the time of the [2006] encounter, the right to be free from excessive force in the context of an arrest was clearly established under the Fourth Amendment.").  Accordingly, I would reverse and remand Hosea's excessive-force claim to the district court for trial.

_____